UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ADELEKE BOSORO,

                      Plaintiff,
                                                                                                 REPORT &
            -against-                                                               RECOMMENDATION
                                                                                      14-CV-1099 (ENV)
AMERICAN COMPREHENSIVE HEALTHCARE
MEDICAL GROUP, P.C., d/b/a AMERICOMP,
f/k/a AFAM COMPREHENSIVE HEALTHCARE
MEDICAL GROUP; MEDICAL SERVICES
MANAGEMENT ORGANIZATION, LLC;
BROOKLYN BOONAKEL LLC; IFEANYI
OBIAKOR; and KAREN HENRY,

                      Defendants.
----------------------------------------------------------------X
GOLD, S., U.S.M.J.:

## Introduction

      Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, under New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.* and §§ 650 *et seq.*, and under 12 N.Y.C.R.R. §§ 142-2.2, 2.4. Plaintiff alleges that he was employed by defendants from June 2012 until December 2013 as a medical assistant and that he was not compensated as required by law. Amended Complaint ("Compl.") ¶ 35 (Docket Entry 13). Plaintiff seeks to recover unpaid overtime compensation, liquidated damages, statutory damages, and attorney's fees and costs for defendants' labor law violations. Docket Entry 13. Defendants did not appear to defend this action and did not file an answer to plaintiff's complaint.

      After plaintiff submitted multiple applications, and in light of defendants' failure to defend this action, United States District Judge Eric N. Vitaliano determined that plaintiff was entitled to entry of a default judgment. Docket Entry 23. Judge Vitaliano then referred this case

to me to report and recommend on the amount of damages, attorney's fees and other relief, if any, to be awarded. Docket Entry 24.

Plaintiff has submitted a memorandum of law, an affidavit, and the declaration of his attorney, Penn Dodson, along with exhibits, in support of his motion for entry of a default judgment. Docket Entry 22. Based on the evidence submitted, I respectfully recommend that the plaintiff be awarded $27,045 in compensatory and liquidated damages pursuant to the FLSA and $2,500 in statutory damages pursuant to N.Y. Lab. Law § 198(1-b). I further recommend that plaintiff be awarded $5,138 in attorney's fees and costs.

## Facts

Plaintiff is a former employee of defendant American Comprehensive Healthcare Medical Group, P.C., also known as AmeriComp or AFAM Comprehensive Healthcare Medical Group (collectively referred to herein as "AmeriComp"). Compl. ¶¶ 1, 5. Plaintiff alleges that he received his paychecks and W-2 forms from defendant Medical Services Management Organization ("MSMO"), and that he received at least one paycheck that had the name of Brooklyn Boonakel LLC on it in addition to AmeriComp's name. Compl. ¶¶ 12, 18. He alleges that defendant Ifeanyi Obiakor is the CEO of AmeriComp and was responsible for company policies such as the pay rate for medical assistants. Compl. ¶¶ 23, 25. Plaintiff further alleges that defendant Karen Henry is the CFO of AmeriComp and was an office manager at the clinic. Compl. ¶¶ 29, 31. Plaintiff alleges that Henry was his supervisor and that she terminated him and withheld his paycheck or was involved in the decision to do so after his termination. Compl. ¶¶ 31.

Plaintiff was paid on a salary basis, with a biweekly pay rate of $961.54. Compl. ¶ 37. He alleges that he was scheduled to work Tuesdays from noon to 8:00 pm, Wednesdays from

2

10:00 am to 6:00 pm, Thursdays from 8:00 am to 6:00 pm, Fridays from 8:00 am to 4:00 pm, and Sundays from 10:00 am to 6:00 pm. Compl. ¶ 39. Although he was expected to clock in at the beginning of each shift, he was not expected to clock out at the end of his shifts. Compl. ¶ 38. Plaintiff claims he regularly worked two hours longer than his scheduled shifts, such that he generally worked about 50 hours per week. Compl. ¶¶ 39-40. Plaintiff alleges that he did not receive overtime pay at the rate of one and one half times the normal hourly rate for the hours he worked beyond the scheduled 40 hours per week. Compl. ¶ 41. Plaintiff also alleges that defendants had a practice of deducting money from medical assistants' paychecks if they did not attend certain meetings. Compl. ¶ 55. Plaintiff further alleges that he did not receive his final paycheck after his employment was terminated. Compl. ¶ 57. Finally, he alleges that the defendants failed to notify him of his pay rate and regular designated pay day upon hiring him. Compl. ¶ 60.

## Discussion

A.  Liability

A defendant's default is deemed an admission of all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). For the reasons set forth below, I conclude that plaintiff's complaint asserts valid claims for violations of state and federal wage and hour laws.

I first turn to whether plaintiff's employment with the defendants is covered by the FLSA. The FLSA provides that

> [e]very employer shall pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . [wages] not less than the minimum wage rate in effect under subsection (a)(1) of this section. 29 U.S.C. § 206(b). An enterprise is engaged in commerce where, in relevant part, it "has employees . . . handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" and where its "annual gross volume of sales made or business done is not less than $500,000." *Id.* § 203(s)(1)(A). Commerce is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." *Id.* § 203(b).

*Mejia v. E. Manor USA Inc.*, 2013 WL 3023505, at *2 (E.D.N.Y. Apr. 19, 2013).

Thus, a plaintiff in an FLSA action must establish: 1) that an employer-employee relationship exists, and 2) that the employer is engaged in interstate commerce. *See* 29 U.S.C. § 206(b). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," and a "person" as, among other things, either an individual or a corporation. *Id.* §§ 203(a), 203(d). The definition of an employer under New York Labor Law is "similarly expansive." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005) (citing, *inter alia*, N.Y. Lab. Law § 651(6)). Plaintiff has alleged that the corporate defendants, American Comprehensive Healthcare Medical Group, Medical Services Management Organization, and Brooklyn Boonakel, operated and managed a medical clinic in Brooklyn doing business as AmeriComp. Compl. ¶¶ 6, 11-12, 17-18. He alleges that he worked at the Brooklyn clinic as a medical assistant. Compl. ¶ 35. The corporate defendants thus clearly meet the definition of employers under both federal and state law.

The corporate defendants also meet the definition of an "enterprise" such that they may be held jointly and severally liable for wage violations. "An entity constitutes an enterprise

4

where the related activities performed (either through unified operation or common control) by any person or persons are for a common business purpose." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (internal quotation marks and brackets omitted) (citing 29 U.S.C. § 203(r)). Plaintiff alleges that the three corporate defendants engaged in related business activities and operated under unified or common control. Compl. ¶¶ 16, 20. He specifically alleges that defendants AmeriComp and MSMO operated from the same address, and that many of the paychecks he received while working for AmeriComp bore MSMO's name. Compl. ¶¶ 6-7, 11, 12. Plaintiff further alleges that he received one or more paychecks bearing the name of defendant Brooklyn Boonakel and the address associated with AmeriComp and MSMO. Compl. ¶ 18. Paystubs submitted by plaintiff in support of his pending motion are consistent with these allegations; most of the paystubs bear the MSMO name, and three of them bear the Brooklyn Boonakel name. Docket Entry 22-5.

Ifeanyi Obiakor and Karen Henry, the individual defendants, may also be held liable as employers. Following the Supreme Court's mandate in *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961) that courts look to the "economic reality" of a situation to determine who qualifies as an employer, the Second Circuit has identified the following factors as relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999). The NYLL employs the same economic realities test. *Slamna v. API Restaurant Corp.*, 2012 WL 2979067, at *3 (S.D.N.Y. July 20, 2012); *Doo Nam Yang*, 427 F. Supp. 2d at 342 n.25. Here, plaintiff's complaint alleges that defendant Obiakor set his rate of pay and exercised substantial control over employees like himself, and that defendant

5

Henry was his direct supervisor and also exercised substantial control over employees like plaintiff. Compl. ¶¶ 25-26, 31. Thus, defendants Obiakor and Henry are employers subject to FLSA and NYLL liability, and are properly held jointly and severally liable with the three corporate defendants for any judgment entered in this case. *See Man Wei Shiu v. New Peking Taste Inc.*, 2014 WL 652355, at *9 (E.D.N.Y. Feb. 19, 2014).

Turning to the second prong of an FLSA claim, to recover under the FLSA a plaintiff must allege that he is either personally engaged in interstate commerce or in the production of goods made in interstate commerce, or that his employer is an enterprise engaged in interstate commerce or in the production of goods for interstate commerce. *Shim v. Millennium Group*, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).

> Under the FLSA, an enterprise engaged in commerce is defined as an enterprise that has employees engaged in interstate commerce or in the production of goods for interstate commerce, *or that has employees handling,* selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce, and whose annual gross volume of sales made or business done is not less than $500,000.

*Id.* (internal brackets and quotation marks omitted) (quoting 29 U.S.C. § 203(s)(1)(A)) (emphasis in original).

Here, plaintiff alleges in his complaint that the corporate defendants were engaged in interstate commerce. Compl. ¶¶ 9, 20. Although plaintiff does not allege specific facts demonstrating how defendants were engaged in interstate commerce, courts have held that interstate commerce involvement may be inferred where supplies used in the business inevitably traveled in interstate commerce. *Huerta v. Victoria Bakery*, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012); *Shim*, 2009 WL 211367, at *3. In *Shim* – a case, like this one, involving an employer that was a medical center – the court held that the interstate commerce element was satisfied "if employees at the Center merely handled supplies or equipment that originated out-

6

of-state.  Surely this was the case; it is simply inconceivable that none of the medical, custodial or office supplies used at the Center originated outside of New York."  *Id.  See also Janus v. Regalis Const., Inc.*, 2012 WL 3878113, at *3 (finding the interstate commerce requirement to be met where "in performing his duties, the plaintiff undoubtedly handled or worked with goods moved in or produced for commerce, like building materials and tools"); *Rodriguez v. Almighty Cleaning*, 784 F. Supp. 2d at 121 (finding that plaintiffs adequately alleged that their employer was an enterprise engaged in interstate commerce because "[t]he Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York").  Although plaintiff Bosoro makes only general allegations that the corporate defendants were enterprises engaged in interstate commerce, it is logical to infer that the medical or other supplies they used traveled in interstate commerce, and I therefore find that he has adequately pled the interstate commerce aspect of an FLSA claim.

Having concluded that plaintiff has established the threshold requirements for invoking the FLSA and NYLL, I now turn to the substance of plaintiff's claims.  Plaintiff has established defendants' joint and several liability for violation of federal and state overtime mandates.  Both federal and state statutes require that employees be paid one and a half times their regular rate for overtime, or time worked above forty hours per week.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2 (mandating an overtime wage calculated, in relevant part, in the same manner as under the FLSA).  Plaintiff affirms that, throughout the period of his employment, he worked about two hours longer than his scheduled shift each day he was scheduled to work, amounting to a workload of about 50 hours per week.  Bosoro Aff. ¶¶ 14-15.  He affirms that he was paid $961.54 every two weeks.  Bosoro Aff. ¶ 12.

Plaintiff alleges that defendants misclassified him as a salaried employee who was exempt from state and federal overtime wage laws. Compl. ¶ 1. However, plaintiff's allegations are sufficient to establish that he was not an exempt worker as defined by either the NYLL or the FLSA. The FLSA's exemptions are construed narrowly, and the "burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Howard v. Port Authority of New York, New Jersey*, 684 F. Supp. 2d 409, 412 (S.D.N.Y. 2010) (quoting *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008). *See also, Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (E.D.N.Y. 2014); *Sethi v. Narod*, 974 F. Supp. 2d 162, 178 (E.D.N.Y. 2013). "The FLSA exempts from [the] overtime requirement any employee employed in a bona fide . . . professional capacity." *Howard*, 684 F. Supp. 2d at 412 (internal quotation marks omitted) (quoting 29 U.S.C. § 213(a)(1). There is no indication that plaintiff, a medical assistant, was employed in a bona fide professional capacity. Moreover, defendants, having defaulted, clearly have not met their burden of providing that plaintiff was exempt. Thus, in light of defendants' default, plaintiff has established defendants' liability for failing to pay overtime.

Plaintiff has also sufficiently alleged violations of state wage notice requirements. State law requires an employer to provide an employee, at the time of hiring, with a written "notice containing the following information: the rate or rates of pay and basis thereof . . . the regular pay day designated by the employer . . . . [T]he notice must state the regular hourly rate and overtime rate of pay" in English and in the employee's primary language. N.Y. Lab. Law § 195(1)(a). Plaintiff alleges that defendants did not provide him with written notice of his rate of pay or regular pay day at the time of his hiring. Compl. ¶ 60. Thus, plaintiff has demonstrated that defendants violated N.Y. Lab. Law § 195.

B. Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *Greyhound Exhibitgroup*, 973 F.2d at 158. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). This determination may be made based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40; *see generally* Fed. R. Civ. P. 55(b)(2).

Plaintiff has described his work schedule in his affidavit and submitted copies of his bi-weekly earning statements and his W-2 for 2012. Docket Entries 22-4, 22-5, 22-6. Although the number of hours plaintiff worked is detailed only in his affidavit and not in other supporting documents, his estimate is to be credited. A "plaintiff need not compute FLSA damages with precision. The burden is on an employer [to] properly . . . record hours, and an employee need only as a *prima facie* matter present an estimate of damages that is satisfactory as 'a matter of just and reasonable inference.'" *Harold Levinson Assocs., Inc. v. Chao*, 37 Fed. App'x 19, 20-21 (2d Cir. 2002) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). In the case of a defendant's default, "the courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Perero v. Food Jungle, Inc.*, 2006 WL 2708055, at *5 (E.D.N.Y. Aug. 7, 2006) (internal quotation marks and citation omitted); *see also Pavia v. Around the Clock Grocery, Inc.*, 2005 WL 4655383, at *6 (E.D.N.Y. Nov. 15, 2005) (finding plaintiff's testimony to be credible when defendants did not appear to challenge plaintiff's claims).

Plaintiff seeks to recover compensatory damages under federal and state law for the period of his employment, from June 2012 through December 2013. Compl. ¶ 35; Pl. Mem., Docket Entry 22-1, at 9. Plaintiff also seeks liquidated damages under both the FLSA and NYLL, prejudgment interest, and attorney's fees and costs. Pl. Mem. at 11-14. In addition to the submissions already detailed, plaintiff has submitted his counsel's time records and her affidavit in support of his request for attorney's fees and costs. Docket Entries 22-8, 22-9. I set out my calculations of these damages below.

*i. Compensatory and Liquidated Damages*

Plaintiffs prevailing on a claim brought under the FLSA are entitled to recover

> in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). New York Labor Law similarly allows for the recovery of "the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules," and liquidated damages.[1] N.Y. Lab. Law § 663(1).

I have reviewed plaintiff's paystubs and sworn statement, Docket Entries 22-4 and 22-5, and have compared them with the calculations set out in his memorandum of law. In light of defendants' default, plaintiff's recollections are presumed accurate. *See Doo Nam Yang*, 427 F. Supp. 2d at 335. Plaintiff's earning statements and affidavit reflect that he was typically paid

---

[1] The statute of limitations for wage and hour claims under federal law is two years; under state law, the limitations period is six years. 29 U.S.C. § 255(a); N.Y. Lab. Law § 198(3). The federal limitation period may be extended to three years, however, if the "cause of action [arises] out of a willful violation." 29 U.S.C. § 255(a). Because plaintiff commenced his action within two years after the cause of action accrued, it is unnecessary to address whether the FLSA limitation period should be extended. *See* Docket Entry 1 (basis for cause of action accrued from June 2012, when plaintiff began employment with defendants, and complaint was filed on February 20, 2014).

10

wages of $961.54 every two weeks, or $480.77 per week.² "There is a rebuttable presumption that a weekly salary covers 40 hours." *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999); *see also Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012). Thus, I divide plaintiff's weekly wage by 40 hours to determine that plaintiff was paid an hourly wage of $12.02. Because plaintiff asserts he worked about ten hours per week above the 40 hour mark, he is entitled to an additional $180.30 (10 hours x $12.02 per hour x 1.5) for each week he worked for defendants. Plaintiff alleges he was employed by defendants from June, 2012 until December, 2013, Bosoro Decl. ¶ 2, and he seeks overtime pay for seventy-five weeks of employment, Pl. Mem. of Law at 9. I therefore recommend that plaintiff be awarded $13,522.50 ($180.30 x 75) in compensatory damages for defendants' violation of the FLSA and NYLL's overtime provisions.

Plaintiff also seeks an award of liquidated damages. Liquidated damages of one hundred percent of the amount of compensatory damages are available under both the FLSA and NYLL.³ 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Pursuant to 29 U.S.C. § 260, courts may, in their discretion, decline to award liquidated damages where an employer "shows to the satisfaction of the court" that it acted in good faith and reasonably believed it did not violate the FLSA. Similarly, NYLL permits a court to decline to award liquidated damages if "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ." N.Y. Lab. Law § 663(1). But an employer who defaults fails to make a showing of good faith. *Rodriguez v. Queens Convenience Deli Corp.*, 2011 WL 4962397, at *4 (E.D.N.Y. Oct.

---

² One of plaintiff's seventeen paychecks was in the amount of $769.23, and two are for $1,057.69. Docket Entry 22-5 at 3, 4, and 15. I do not discern any explanation for this discrepancy on the earnings statements submitted by plaintiff. Because plaintiff was almost always paid the wage rate described in the text, I use that rate to calculate his damages.
³ Effective April 9, 2011, New York Labor Law was amended to more closely mirror the FLSA, allowing plaintiffs to recover liquidated damages in the amount of one hundred percent of their compensatory damages. N.Y. Lab. Law § 198(1)(a)(2011).

11

18, 2011) (citing *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *6 (S.D.N.Y. May 2, 2011)). I therefore recommend that plaintiff be awarded liquidated damages.

Plaintiff's motion for default judgment raises the question of whether awarding cumulative liquidated damages, commonly known as "stacking," is appropriate under the FLSA and NYLL. *See Siemieniewicz v. CAZ Contracing Corp.*, 2012 WL 5183375, at *12 (E.D.N.Y. Sept. 21, 2012) ("District courts in this circuit have disagreed as to whether a plaintiff may secure cumulative awards of liquidated damaged under both statutes."). Some courts permit stacking based on the view that the liquidated damages provisions of the two statutes serve different functions; these courts conclude that, under the FLSA, liquidated damages are intended to compensate an employee for the delay in receiving wages due, whereas under NYLL, liquidated damages are punitive. *See Herman*, 172 F.3d at 142 ("Liquidated damages are . . . compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008) ("[L]iquidated damages provided for in the New York Labor Law are punitive in nature.").

More recently, however, courts have been divided, with some adopting the reasoning described above while others hold that cumulative damages are unwarranted. *Compare, e.g., Gunawan*, 897 F. Supp. 2d at 91 (collecting cases and awarding cumulative damages because "the two statutory provisions serve different purposes and are therefore not mutually exclusive"), *and Eschmann v. White Plains Crane Serv., Inc.*, 2014 WL 1224247, at *8 (E.D.N.Y. Mar. 24, 2014) (agreeing with the majority view that a plaintiff is entitled to recover under both statutes), *with Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013) (citing cases and concluding that a cumulative award is not appropriate because "the distinction between

compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL . . . [is] semantic . . . and also not persuasive"), *and Yun Hong Hua v. Eight Star Inc.*, 2015 WL 2354322, at *4 (E.D.N.Y. May 15, 2015) (finding that paying 100% liquidated damages both compensates and provides punitive damages to the employee, and thus declining to "stack" federal and state liquidated damages).

I find the reasoning in *Yun Hong Hua* compelling. Among other persuasive arguments, *Yun Hong Hua* points out that the unavailability of FLSA liquidated damages when an employer acts in good faith seems inconsistent with the view of FLSA liquidated damages as compensatory, because "[i]t is hard to see why an employee should be deprived of compensation which he is owed depending on whether the employer acted in good faith." *Id.* at *3. A defendant acting in good faith may avoid punitive damages, not compensatory damages. *Id.*

The compensatory rationale behind FLSA liquidated damages is further undercut because a windfall results when liquidated damages are viewed as a substitute for interest. *Id.* Here, plaintiff worked until December 2013 and will likely have judgment entered in his favor less than two years later. A recovery of 100% liquidated damages results in a much higher award than a standard rate of return would provide. *See id.* ("[N]o one . . . gets a 100% return on past due obligations. . . if liquidated damages are intended to compensate for lost interest, [a 100% return] is quite an extraordinary rate of return on the unpaid wages. It is particularly so considering that the FLSA has a short statute of limitations. . . ."); *see also* N.Y. C.P.L.R. § 5004 (setting the state interest rate at 9%). Even if liquidated damages under the FLSA are primarily intended to be compensatory, awarding 100% satisfies both the compensatory and punitive purposes of liquidated damages, making it unnecessary to award an additional amount under NYLL. *Yun Hong Hua*, 2015 WL 2354322 at *4. I therefore recommend that plaintiff be

awarded liquidated damages in the amount of $13,522.50 under the FLSA, and no additional liquidated damages under NYLL, for unpaid overtime.

### ii. Statutory Damages

Effective April 9, 2011, the Wage Theft Prevention Act of the NYLL required that "every employer shall provide his or her employees. . . at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing . . . rates of pay and basis thereof, whether paid by the hour, shift, day, week. . . ." N.Y. Lab. Law § 195(1)(a).[4] The notice is to contain "information about the employee's rate of pay, hours of employment, and contact information for the employer." *Guaman v. Krill Contracting, Inc.*, 2015 WL 3620364, at *8 (E.D.N.Y. June 9, 2015). An employee who is not provided with proper notice within ten days of his or her first day of employment may recover damages of fifty dollars for every week the violations occurred, up to a statutory maximum of $2,500. N.Y. Lab. Law § 198(1-b).[5] Plaintiff worked for approximately seventy-five weeks, and is thus entitled to recover $2,500, the maximum amount permitted under N.Y. Lab. Law § 198(1-b).

### iii. Plaintiff's Final Paycheck

Section 191(3) of NYLL provides that, "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred." Plaintiff alleges he did not receive his final paycheck from defendants after his employment was terminated. Compl. ¶ 57; Bosoro Aff. ¶ 17. However, plaintiff does not request damages related to that failure in his memorandum of law. Docket Entry 22-1 at 9-

---

[4] This provision was updated in 2014, but since plaintiff's employment occurred before that change, I refer to the provision as it was written during the period of his employment.
[5] N.Y. Lab. Law § 198 was revised effective February 27, 2015; however, since plaintiff's employment occurred during the period covered by the previous version of the statute, that version properly applies here. *See Galicia v. 63-68 Diner Corp.*, 2015 WL 1469279, at *8 n.14 (E.D.N.Y. Mar. 30, 2015).

14. Furthermore, although plaintiff alleges that he was terminated in December 2013, he does not provide the Court the precise date of his termination or the amount of time for which he remains unpaid, and it is therefore unclear how much money he would have been entitled to in his final paycheck. Accordingly, I recommend that he not be awarded damages for the defendants' failure to provide him with his final paycheck.

    *iv.*    *Prejudgment Interest*

Plaintiff also requests prejudgment interest on the damages awarded pursuant to state law. Prejudgment interest may be awarded in addition to liquidated damages under NYLL, but not under the FLSA. *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988)). Prejudgment interest is calculated only on unpaid wages due under the NYLL and not on liquidated damages. *Janus v. Regalis Constr., Inc.*, 2012 WL 3878113, at *8 (E.D.N.Y. July 23, 2012). In any event, "even though a plaintiff seeks recovery under the FLSA and NYLL, where, as here, the plaintiff is awarded liquidated damages under the FLSA, he is precluded from also collecting prejudgment interest." *Galicia v. 63-68 Diner Corp.*, 2015 WL 1469279, at *7 (E.D.N.Y. Mar. 30, 2015). Because I recommend that plaintiff be awarded liquidated damages under the FLSA for all of his wage claims, I further recommend that he not be awarded prejudgment interest.

    *v.*    *Attorney's Fees and Costs*

Plaintiff's counsel also seeks fees and costs for the work performed and expenses incurred by her firm. Both the FLSA and New York Labor Law provide for an award of reasonable attorney's fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). Counsel has submitted contemporaneous time records, Docket Entry 22-9, as required in the Second Circuit. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Although a court has "considerable discretion" when determining an award of attorney's fees, a "presumptively reasonable fee" is generally calculated by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (internal quotations omitted). The reasonableness of the hourly rate is evaluated in reference to "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation . . . . The 'community' is generally considered the district where the district court sits." *Santillan*, 822 F. Supp. 2d at 299 (internal quotation marks and citations omitted).

Counsel seeks $6,624 in attorney's fees and $1,179 in costs. Dodson Decl., Docket Entry 22-8, ¶ 18. Having reviewed counsel's time records, I find that the tasks performed and the amount of time spent on them are generally reasonable. However, the requested hourly rate of $400 for partner Penn Dodson is high for this district in light of the simplicity of this case. *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 208 (E.D.N.Y. 2007) (noting that since "the FLSA and New York Labor Law are both straightforward" and "all but one defendant defaulted," the case was relatively simple).

Courts have generally found the prevailing hourly rates in the Eastern District of New York to be between $350 and $400 for law firm partners. *Acosta v. Hall of Fame Music Stores, Inc.*, 2015 WL 1003550, at *8 (E.D.N.Y. Mar. 5, 2015). Given the simplicity of this case, I recommend that Dodson be awarded $350 per hour for her work on the case. Counsel's time records reflect 12.44 hours of attorney time.[6] Docket Entry 22-9 at 1. I therefore recommend that plaintiff be awarded $4,354 ($350 x 12.44 hours) in attorney's fees.

---

[6] Even at counsel's requested hourly rate of $400, the total amount of attorney's fees would be $4,976 and not $6,624.

Counsel also requests $1,179 in litigation expenses, of which $395 is classified as a "Flat fee for standard file handling costs." Dodson Decl. ¶ 17. In her declaration, counsel elaborates that the fee covers postage for certain mailings, copying, scanning, faxing, printing, and other such costs. Dodson Decl. ¶ 17. Perhaps this fee might be reasonable in cases that are more complex and continue for a longer time period than this one, but I find the fee to be unreasonable here, where it is highly unlikely such costs have been incurred. I thus recommend plaintiff be awarded $784 in costs, which includes the filing fee and process service fees counsel documents in her declaration. Dodson Decl. ¶ 17. In sum, I respectfully recommend that plaintiff be awarded a total of $5,138 in attorney's fees and expenses.

## Conclusion

For the reasons stated above, I respectfully recommend that plaintiff be awarded a total of $34,683, comprised of the following amounts: $27,045 in compensatory and liquidated damages under the FLSA for failure to pay overtime wages, $2,500 in statutory damages for failure to provide wage notices required by N.Y. Lab. Law § 198(1-b), and $5,138 in attorney's fees and costs. I further recommend that corporate defendants American Comprehensive Healthcare Medical Group, P.C., Medical Services Management Organization, LLC, and Brooklyn Boonakel LLC, and individual defendants Obiakor and Henry, be held jointly and severally liable for these amounts.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before September 17, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day

limit). Plaintiff shall serve this report and Recommendation on the defaulting defendants at their last known addresses and file proof of service with the Court.

SO ORDERED.

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
August 31, 2015

U:\MHS 2014-2015\Bosoro v. American Comprehensive Healthcare Medical Group\Bosoro Default Judgment Final.docx